IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ELLIS WRIGHT, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. **3:14-CV-244-L** |
| § | |
| **TARGET CORPORATION**,* § | |
| § | |
| Defendant. § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Defendant Target Corporation's Motion for Summary Judgment, filed June 24, 2014. After careful consideration of the motion, response, briefs, reply, record, and applicable law, the court **grants** Defendant Target Corporation's Motion for Summary Judgment.

**I.     Background**

Ellis Wright ("Plaintiff" or "Wright") originally filed this action in 95th Judicial District Court, Dallas County, Texas, on December 23, 2013, against Target Corporation ("Defendant" or "Target"). *See* Pl.'s Orig. Pet. 1. This case involves a slip-and-fall that occurred in one of Target's stores in January 2012, and Wright seeks various damages as a result of the fall and injuries he sustained.

On January 22, 2014, Target removed this action to federal court, contending that the court has jurisdiction over the action because there is complete diversity of citizenship between the parties and the amount in controversy, exclusive of interest and costs, exceeds $75,000. Plaintiff

---

* Plaintiff's Original Petition indicates that there is more than one defendant; however, the only defendant in this action is Target Corporation.

**Memorandum Opinion and Order – Page 1**

does not contest the removal, and the court agrees that it has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).

Target has filed a motion for summary judgment and contends that Plaintiff produces no evidence that it had actual or constructive notice of the existence of a condition on its premises that posed an unreasonable risk of harm. Accordingly, Target contends that no genuine dispute of material fact exists regarding notice and that it is entitled to judgment as a matter of law.

Wright counters that genuine disputes of material fact exist with respect to notice and whether Target's negligence proximately caused the incident in question and Plaintiff's resulting injuries. Plaintiff urges the court to deny the motion for summary judgment.

## II.     Motion for Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*, 475 U.S. at 587. (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence

of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## III. Undisputed Facts

The facts set forth herein are either undisputed by the parties or viewed in the light most favorable to Wright as the nonmoving party.

On January 1, 2012, Wright was shopping in the Target store located at Interstate Highway 20 and Carrier Parkway in Grand Prairie, Texas. He had been in the store about ten minutes and was on a main aisle from the front to the back of the store, near the grocery section. Wright was not carrying anything, but he was talking to his mother on his cell phone. He was not looking at the floor and did not see anything on the floor before he slipped and fell. Plaintiff landed on his hip and buttocks. Several people were near Wright after he fell. After Wright fell, he noticed his hands were covered with a clear, oily substance. While Wright was on the floor, he noticed that the substance had a different sheen and was "kind of thick" and that it covered an area approximately five by ten feet, or four by eight feet. The substance was in the pattern of a semi-circle, and Wright was in the middle of it. At some point, Wright crawled out of the oily area. Wright does not know how long the oily substance was on the floor before he fell, how it got there, what it was, whether Target knew of its existence, or whether Target knew how long the oily substance had been on the floor. Wright suffered injuries as a result of the fall.

Deanna Dodd ("Dodd") was the executive team leader for the sales floor at the store where Plaintiff fell, and she performed the initial investigation of the incident. She responded to a call from a team member that Plaintiff had fallen and went to the area and found him sitting on the floor against the baystacks of the aisle. When Dodd arrived, she saw a clear, oily substance on the floor that she determined was probably tire shine, which is displayed on the next aisle from where

Wright was sitting. Later she and her team members inspected the area and found a bottle of tire shine that had an open nozzle and was wet on the end. Some of the contents of the bottle were missing. According to Dodd, she had been through the area where the incident occurred 20 minutes before Wright fell, and the substance was not on the floor at the time she passed through the area. She also testified that two team members had been through the area within 30 minutes of the incident.

**IV.     Analysis**

        **A.     Issues to be Decided**

The issues to be decided regarding this matter are: (1) whether Target received actual or constructive notice of the substance on the store floor, and (2) whether the adverse inference rule applies to the facts of this case.

        **B.     Applicable Law Regarding Premises Liability**

Based on the allegations of Plaintiff's Original Petition ("Petition") and the applicable law, the court first determines whether Plaintiff's claim is one for premises liability as opposed to one for negligent activity. Plaintiff alleges as follows:

> II.
> FACTS
>
> On or about January 1, 2012, Plaintiff was a patron of the Target located at 554 W. Interstate 20, Grand Prairie, Texas 75052, for the purpose of transacting business therein, and while shopping at the business Plaintiff was caused to slip and fall because of the negligence of the Defendant and their agents, servants and employees. Such negligent acts and omissions were committed by the Defendants' agents, servants and employees while in the course and scope of their employment with said Defendants, and each of which acts, singularly or collectively, was a proximate cause of the damages and injuries sustained by the Plaintiff. All of the following acts of negligence, committed on the part of the Defendants, their agents, servants and employees, occurred in Dallas County, Texas, in that they:
>
> (a)     failed to clean the floor;

  (b)  failed to clean the floor when they knew or should have known that it was unsafe for the patrons;

  (c)  failed to warn the patrons, and the Plaintiff in particular, of a hazardous and dangerous condition;

  (d)  failed to properly train and/or monitor employees;

  (e)  failed to prevent the dangerous condition; and

  (f)  failed to take adequate measures or reasonable steps to coordinate work to maintain the premises.

### III.
### PREMISES LIABILITY

Defendants were the owner occupier of the premises at the time of the occurrence where the Plaintiff was injured and the Defendants failed to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition that the Defendants knew about or in the exercise of ordinary care should have known about. The Defendants' conduct was a proximate cause of the Plaintiff's damages set forth herein.

The store manager failed to properly train employees to prevent the occurrence and investigate the occurrence. The manager shares in a bonus program to profit from under-reporting problems.

At the time of the occurrence the Plaintiff was an invitee as defined by law.

### IV.
### DAMAGES

Plaintiff would show that as a direct and proximate result of the acts and/or omissions of negligence aforementioned, Plaintiff was caused to suffer serious and permanent personal injuries to his body, all of which have caused him in the past, and will cause him in the future, physical pain, mental anguish, lost wages and loss of earning capacity, physical impairment, disfigurement, and medical and hospital expenses, for which he should be compensated in accordance with the laws of the State of Texas. The damages sought are within the jurisdictional limits of the Court, with a monetary relief over $200,000.00 but not more than $1,000,000.00.

Pl.'s Orig. Pet. 2-3.

Under Texas law, negligent activity and premises liability are separate claims:

> Recovery on a negligent activity theory requires that the person have been injured by or as a contemporaneous result of the activity itself rather than by a condition created by the activity. Negligence in the former context means simply doing or failing to do what a person of ordinary prudence in the same or similar circumstances would have not done or done. Negligence in the latter context means failure to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition which the owner or occupier [of land] knows about or in the exercise of ordinary care should know about.

*Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 753 (Tex. 1998) (footnotes and internal quotation marks omitted) (original brackets). "[A] premises defect claim is based on the property itself being unsafe." *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006) (citing *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992)).

The court determines that Wright's claim is one of premises liability. His claims arise from Target's alleged failure to prevent a harm to him caused by an alleged condition of a slippery or oily substance on the floor. His claim is focused on the unsafe condition that existed by virtue of the substance on the floor rather than any contemporaneous activity. The elements of a premises liability claim are:

> (1) [a]ctual or constructive knowledge of a condition on the premises by the owner or occupier; (2) [t]hat the condition posed an unreasonable risk of harm; (3) [t]hat the owner or occupier did not exercise reasonable care to reduce or eliminate the risk; and (4) [t]hat the owner or occupier's failure to use such care proximately caused the plaintiff's injury.

*CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 99 (Tex. 2000) (citations omitted).

To establish notice under Texas law, a plaintiff must establish: "(1) the defendant placed the substance on the floor, (2) the defendant actually knew that the substance was on the floor, or (3) it is more likely than not that the condition existed long enough to give the premises owner a reasonable opportunity to discover it." *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814 (Tex. 2002). No evidence exists in the record to establish, or raise a genuine dispute of material fact,

**Memorandum Opinion and Order – Page 7**

that Target had actual notice of the substance on the floor. Accordingly, the court will direct its attention to the issue of constructive notice.

Texas law requires some evidence of how long a condition existed before holding a premise owner liable under a theory of constructive notice, and the law is summarized as follows:

> The Rule requiring proof that a dangerous condition existed for some length of time before a premises owner may be charged with constructive notice is firmly rooted in our jurisprudence. . . . The rule emerged from our reluctance to impose liability on a storekeeper for the carelessness of another over whom it had no control or for "the fortuitous act of a single customer" that could instantly create a dangerous condition. . . .
>
> The so-called "time-notice rule" is based on the premise that temporal evidence best indicates whether the owner had a reasonable opportunity to discover and remedy a dangerous condition. An employee's proximity to a hazard, with no evidence indicating how long the hazard was there, merely indicates that it was *possible* for the premises owner to discover the condition, not that the premises owner reasonably *should* have discovered it. Constructive notice demands a more extensive inquiry. Without some temporal evidence, there is no basis upon which the factfinder can reasonably assess the opportunity the premises owner had to discover the dangerous condition.
>
> What constitutes a reasonable time for a premises owner to discover a dangerous condition will, of course, vary depending upon the facts and circumstances presented. And proximity evidence will often be relevant to the analysis. Thus, if the dangerous condition is conspicuous as, for example, a large puddle of dark liquid on a light floor would likely be, then an employee's proximity to the condition might shorten the time in which a jury could find that the premises owner should reasonably have discovered it. Similarly, if an employee was in close proximity to a less conspicuous hazard for a continuous and significant period of time, that too could affect the jury's consideration of whether the premises owner should have become aware of the dangerous condition. But in either case, there must be some proof of how long the hazard was there before liability can be imposed on the premises owner for failing to discover and rectify, or warn of, the dangerous condition. Otherwise, owners would face strict liability for any dangerous condition on their premises, an approach we have clearly rejected.

*Reece*, 815 S.W.3d at 815-16 (emphasis in original) (footnote and citations omitted).

**Memorandum Opinion and Order – Page 8**

### C.     Discussion

The essence of Plaintiff's argument regarding constructive notice is that "a jury could find that the unreasonably dangerous conditions could have been on the [floor] for more than 20 minutes." Pl.'s Br. in Supp. of Resp. 6. Wright also argues that Dodd could have failed to see the substance 30 minutes before the fall occurred because the substance was clear. The court cannot accept this argument because Dodd testified that the substance was not on the floor when she passed through the area 20 minutes before the incident. Specifically, Dodd testified that she had stopped in the area "to neaten up the aisle, and so I was directly on the tiles that were affected." Def.'s App. D, Dep. of Dodd 26. Wright offers no competent summary judgment evidence to contradict Dodd's testimony. He takes other testimony out of context to imply that the substance may have been on the floor for as long as 30 minutes. In any event, whether the substance was on the floor for 20 or 30 minutes does not speak to whether the substance was on the floor long enough for Target to have reasonably discovered it. The facts in this case merely indicate that it may have been *possible* for Target to have discovered the substance. Texas courts, however, require more than a mere possibility. *Reece*, 815 S.W.3d at 816. The court cannot make the unreasonable leap or inference that Target *should* have discovered the clear, oily substance on the floor based on the record before it. Accordingly, the court determines that Wright fails to raise a genuine dispute of material fact that Target had constructive notice of the oily substance on the floor, and Target is entitled to judgment as a matter of law on Plaintiff's premises liability claim.

### D.     Adverse Inference Rule

Wright intimates that Target destroyed or disposed of critical evidence and that an adverse inference of spoliation should be used to create a genuine dispute of material fact to defeat

summary judgment. Target contends that no basis exists for the use of an adverse inference. The court agrees.

Spoliation of evidence means the "destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Ashton v. Knight Transp. Inc.*, 772 F. Supp. 2d 772, 800 (N.D. Tex. 2011) (quoting *Silvestri v. General Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) (citations omitted)). "An adverse inference of spoliation can be relevant on summary judgment." *Schreane v. Beemon*, ___ F. App'x ___, 2014 WL3563611, at*4 (citation omitted). In determining whether an adverse inference is appropriate, "federal courts . . . apply federal evidentiary rules rather than state spoliation laws in diversity suits." *Condrey v. Suntrust Bank of Georgia*, 431 F.3d 191, 203 (5th Cir. 2005) (citation omitted). As this is a diversity action, the court applies federal evidentiary rules.

A party is entitled to an adverse inference with respect to the destruction of evidence only if the movant can show that the destroyer of the evidence acted in "bad faith." *King v. Illinois Cent. R.R.*, 337 F.3d 550, 556 (5th Cir. 2003) (citations omitted). Stated another way, a party is entitled to an adverse inference against another party "who intentionally destroys important evidence in bad faith" "because the contents of those documents were unfavorable to that party." *Whitt v. Stephens Cnty.*, 529 F.3d 278, 284 (5th Cir. 2008) (citations omitted).

Wright's adverse inference argument focuses on the deposition of Dodd. He offers portions of Dodd's deposition and includes his characterization and interpretation of the evidence:

<u>DEANNA DODD DEPOSITION</u>

- Deanna Dodd met Mr. Wright when he was at her target store on January 1, 2012. (Page 6, line 15 to Page 7, line 11)

**Memorandum Opinion and Order – Page 10**

- The first indication that there had been some sort of incident involving Mr. Wright was when Rebecca Talley contacted her to come to the area because she heard the guest fall.  (Page 13, lines 8 – 13)

- There was something on the floor that they determined that had caused Mr. Wright to fall.  They determined that it was probably tire shine, and there is a tire shine display on the next aisle over.  (Page 15, line 23 to Page 16, line 6)

- It was obvious that it had been transported over there because it was not [a] situation where something gets cut and put on a shelf where it supposed to go and then it leaks.  (Page 16, lines 7 – 13)

- Although it is her job as the person at the store level who is charged with investigating incidents like this, and it is her job to talk to everybody that knows anything about it, she did not 100% determine the cause of the tire shine on the floor in this case.  Team members found the bottle and the nozzle was open and it was wet on the end.  They assume that this was probably what was on the floor.  There was part of the liquid volume missing from the bottle.  It looked like it had been misted, meaning that it had been sprayed out by someone.  (Page 16, line 14 to Page 17, line 25)

- She did not personally look at any surveillance cameras.  (Page 18, lines 4 – 5)

- She does not know whether there is a camera in that area.  (Page 18, lines 14 – 15)

- At this point, probably no one would know whether there was a camera in that area because they are moving periodically, so she does not know if there was a camera on that aisle or not.  (Page 18, lines 14 – 19)

- She does not know what percentage of the store has a camera on it at any given point. The Assets Protection Department would know that.  That is not something that she gets involved with.  She does not know from her own personal knowledge whether there was a camera pointed at this area.  (Page 19, lines 1 – 12)

- She does not know who she would talk to in the Asset Protection Department to get them to review the film.  She does not know who was on duty that day.  It is not in her report.  The report simply does not ask for it.  (Page 20, lines 3 – 13).

- She does not know, under the Target polices, how long the digital images are kept.  (Page 21, lines 8 – 10)

**Memorandum Opinion and Order – Page 11**

- There is no Target policy that tells her either that she should go review videos or she should not review the videos. That is left up to the individual's discretion. She does not know when she got information claiming that there was not a video of the incident. (Page 23, line 20 to Page 24, line 4)

- It is not part of the investigation that she is charged with to figure out how long the substance was on the floor. They don't tell you that you are supposed to figure that out. There is no instruction. They do have to determine who the last team member through the area was. (Page 24, lines 10 – 21)

- It is possible that the tire shine could have been on the floor for 20 minutes. (Page 25, lines 9 – 16)

- She can affirmatively say that it was not on the floor 30 minutes before, but nothing about the timing other than that. (Page 26, line 21 to Page 27, line 4)

- She verified many of the facts herself, such as there was a thin layer of oil on the floor, and it covered an area of approximately 4 feet wide by 6 to 8 feet long. (Page 28, lines 7 – 14)

- It would be a violation of Target's written policy to not immediately clean up the spill. (Page 29, lines 4 – 12)

- The fourth page of the incident report asked whether she can determine the source of the condition and she said yes. They found out that it had come from the bottle that they found. There was no question to be filled out about how long it had been on the floor and she does not know the reason that they do not investigate that. (Page 32, lines 17 to Page 33, line 8)

- If they had looked up the cameras [and] the area had been recorded, then we would know the answer to how long it had been on the floor. (Page 33, lines 12 – 16)

- We do know that it had been there long enough that they could piece together that someone would have to have gotten the bottle from the next aisle, take it to the aisle where this occurred, opened and sprayed it, left the bottle there, and left the area. All those things had to have happened. (Page 33, line 17 to Page 34, line 2)

- There are no other possible scenarios. (Page 34, lines 3 – 9)

Pl.'s Br. in Supp. of Resp. 3-4.

**Memorandum Opinion and Order – Page 12**

The problem with Plaintiff's argument is that he assumes that a recording of the incident took place. He has not established that a camera captured the fall of his client or anything else of relevance to the incident made the basis of the lawsuit. In other words, Wright has not produced competent summary judgment evidence that the incident was recorded, that any images of the incident were taken by Target, or that the "evidence" ever existed. Likewise, he has not shown, or raised a genuine dispute of material fact, that any evidence was materially altered by Target. As Wright has not raised a genuine dispute of material fact that the evidence to which he refers ever existed, the adverse inference rule never comes into play. Had Wright raised a genuine dispute of material fact regarding the existence of or material alteration of relevant evidence, the court would view this matter differently. For these reasons, Wright is not entitled to an adverse inference regarding constructive notice.

### V.     Conclusion

For the reasons herein stated, the court **determines** that no genuine dispute of material fact exists as to Plaintiff's claim of premises liability and **grants** Defendant Target Corporation's Motion for Summary Judgment. Accordingly, the court **dismisses with prejudice** this action. Judgment will issue by separate document as required by Federal Rule of Civil Procedure 58.

**It is so ordered** this 10th day of October, 2014.

*[signature]*
Sam A. Lindsay
United States District Judge